```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CMA-CGM (CANADA), INC.,
                                                                    MEMORANDUM AND ORDER

                        Plaintiff,                                  CV 10-1514

        -against-                                                   (Wexler, J.)

WORLD SHIPPERS CONSULTANTS, LTD.,

                        Defendant.
------------------------------------------------------------X
```

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y
★ JAN 17 2013 ★
LONG ISLAND OFFICE

APPEARANCES:

    THE LAW OFFICES OF MARK MCKEW, PLLC
    BY: MARK L. MCKEW, ESQ.
    Attorneys for Plaintiff
    1725 York Avenue, Suite 29A
    New York, New York 10128

    CHALOS & CO., P.C.
    BY: GEORGE M. CHALOS, ESQ.
        KATHERINE N. CHRISTODOULATOS, ESQ.
    Attorneys for Defendant
    55 Hamilton Avenue
    Oyster Bay, New York 11771

WEXLER, District Judge

    This is a case commenced by Plaintiff to recover shipping charges from Defendant. Plaintiff claims that the clear terms of the parties' agreement as well as their course of dealing require payment. Defendant claims that as an agent for a disclosed principal, it is not required to make payment for the shipping and associated costs incurred. A non-jury trial was held on October 25, 2012. The parties have submitted proposed post-trial findings and conclusions. Upon consideration thereof and the proceedings herein, this constitutes the Court's Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

I. The Parties and the Industry

1. Plaintiff CMA-CGM (CANADA), Inc. ("CMA") is a Canadian corporation that, at all relevant times, acted as the agent of companies known as CMA-CGM S.A. and Delmas.

2. CMA-CGM S.A. ("CMA S.A.") is an ocean carrier engaged in the international transport of containerized cargo. Delmas is a brand of CMA S.A. that, at times relevant hereto, specialized in the transport of containerized cargo between North America to and from West Africa.

3. CMA, as an agent of both Delmas and CMA S. A. was at all relevant times, engaged in the business of providing and/or arranging for international ocean shipping and related work, materials and services.

4. Defendant World Shippers Consultants, Ltd. ("World Shippers") is a corporation located within this District. World Shippers provides services to entities in need of shipping services such as those provided by CMA.

5. The services provided by World Shippers include the booking of cargo container space on vessels such as those operated by CMA and its agent, Delmas.

6. The parties hereto are knowledgeable about the practices of the shipping industry and, prior to the transactions at issue in this matter, have conducted business amongst themselves involving payments of over $1 million.

7. It is the practice in the shipping industry for shippers or their agents, to secure container space in vessels in advance of the shipping date to ensure that such space will be available when needed.

8. Cargo space is secured by various forms of communication, including telephone and e-mail.

9. Among the entities that typically reserve space for future voyages are shippers who reserve space for themselves, and third parties who reserve space on behalf of shippers.

10. Those entities that reserve space on behalf of shippers are known, in the relevant industry, as "forwarders" or a "freight forwarders." The court herein uses only the term "forwarder."

11. In addition to booking space in a vessel, a forwarder might also handle documentation for the shipment on behalf of the shipper as well as various services related to the shipments.

12. In the context of the parties' business relationship, World Shippers has acted as an agent for shippers and as a forwarder.

13. When space is reserved on vessels for future voyages, that space is confirmed by operators of vessels, such as CMA, in a document known as a "booking confirmation."

14. It is customary in the cargo shipping business for forwarders such as World Shippers to request cargo space, and have that space confirmed in a booking confirmation that does not identify the shipper. Instead, the confirmation is issued only in the name of the forwarder.

15. In addition to the booking confirmation, the documents generally associated with the type of cargo shipment at issue here are the draft bill of lading, the final non-negotiable bill of lading, and an invoice.

16. Generally, a shipper is identified in a booking confirmation only in those cases where the vessel operator, such as CMA, is dealing directly with the shipper and not with a forwarder. Where the operator books space on behalf of a forwarder the shipper is not identified until the bill of lading process begins.

## II. The Bookings and Charges At Issue

17. During the time period of June through July of 2009, World Shippers arranged for cargo space in connection with 23 shipments.

18. The documents associated with each shipment are exhibits before the court. At trial, counsel directed the testimony of the two witnesses who testified (one witness for each party) to the documents associated with one of the shipments. Upon review of all exhibits and the trial testimony, the court finds that the documents discussed at trial with respect to that shipment are representative of the documents associated with all 23 shipments at issue.

19. The documents associated with each of the 23 shipments at issue here are: (1) the booking confirmation; (2) the draft bill of lading; (3) the final non-negotiable bill of lading, and (4) the invoice.

20. The court refers herein to the draft and final bills of lading as the "Bill of Lading."

### A. The Booking Confirmations

21. The first document discussed at trial that was associated with each shipment is the booking confirmation. Each request for shipment is evidenced by the booking confirmation issued to World Shippers by Delmas.

22. The Delmas logo appears on each booking confirmation. Plaintiff CMA's corporate name (CMA-CGM (Canada)), appears directly below the Delmas logo

on each booking confirmation, along with Plaintiff's Montreal address. Each booking confirmation bears a booking number.

23. No booking confirmation associated with the 23 shipments at issue lists a shipper. Instead, each reflects the fact that space was reserved by World Shippers on behalf of an undisclosed shipper. Thus, the only entity with which Plaintiff dealt in booking space on its vessels was Defendant World Shippers.

24. The booking confirmations were agreed to between Delmas, as a brand of CMA, and World Shippers.

25. The booking confirmations each bear a section entitled "clauses."

26. Clause number 17 of each booking confirmation states that "all moves referenced in the booking confirmation are subject to the terms and conditions of the carrier-issued long form bill of lading." Clause 17 states further that the customer named in the booking confirmation "hereby acknowledges and agrees to all the terms and conditions of the carriers issued long form bill of lading."

27. Clause 21 of each booking confirmation states that the booking is "subject to CMA terms and conditions."

28. The court finds that the "terms and conditions" referred to in clauses 17 and 21 are the same terms and conditions.

29. Neither the long form bill of lading, nor its terms and conditions are attached to the booking confirmation. Instead, the booking confirmation refers to the availability of the long form bill of lading at any CMA agency, or at a website address (set forth in the booking confirmation) where the complete bill of lading and all terms and conditions can be viewed.

B.  The Bills of Lading

30. While the booking confirmations do not reflect a shipper, the Bills of Lading reflect the identity of the shipper of the goods, and refer to World Shippers as the "forwarding agent." These documents also reflect the fact that the shipments were made approximately four weeks after the dates of the booking confirmations.

31. The Bills of Lading are signed by Delmas "a Division of CMA CGM S.A., the Carrier by CMA CGM (Canada) Inc. as agent."

32. The Bills of Lading state that the "Merchant" "expressly accepts and agrees to be bound by it terms and conditions, including the terms on the reverse hereof."

33. The Bills of Lading before the court are printed on one side only and there is no evidence of any terms that appeared "on the reverse" of those documents. Nonetheless, the Bills of Lading recite that the "Merchant" is fully aware of its terms.

34. The full terms and conditions of the Bills of Lading, as set forth and available on CMA's website, are before the court in the form of Plaintiff's Exhibit 2.

35. Plaintiff's Exhibit 2, hereinafter the "Terms and Conditions," is a sixteen page document.

36. The "Definitions" section of the Terms and Conditions define the term "Merchant" who, as noted above is deemed to be bound by all terms and conditions of the Bills of Lading, to include the shipper as well as "anyone acting on behalf of," inter alia, the shipper.

37. Section 12 of the Terms and Conditions refers to "Freight." Freight is defined to include all charges payable to the carrier (in this case, CMA) including the tariff and other storage charges incurred.

38. Clause 4 of Section 12 of the Terms and Conditions provides that the merchant "shall be responsible for the full payment to the Carrier, its agent, representatives, successors or assignees, of the entire Freight due . . . without possible deduction or set off of any sort."

39. Clause 6 of Section 12 of the Terms and Conditions provides that if the Merchant fails to make payment, he shall be liable for additional charges, including attorneys' fees and immediate interest.

40. Clause 1 of Section 26 of the Terms and Conditions provides for the joint and several liability of "all of the Persons coming within the definition of Merchant," of all obligations in the Bill of Lading. That liability is stated to include "court costs, expenses and attorney's fees incurred in collecting charges and sums due to the Carrier."

41. Clause 5 of Section 12 of the Terms and Conditions is the only clause in that section that refers to entities "engaged by the Merchant to perform forwarding services." Such entities are deemed to be "the exclusive agent of the Merchant for all purposes and any payment of Freight to such Person shall not be considered payment to the Carrier." The "failure of such Person to pay any part of the Freight to the Carrier" is to be considered as a "default by the Merchant in the payment of Freight."

42. Clause 5 of Section 12 of the Terms and Conditions thus addresses specifically the issue that might arise if a shipper made payment directly to a forwarder, and the forwarder, in turn, failed to make that payment to CMA.

43. Specifically, the Terms and Conditions provide that any payment made to a forwarder is not to be considered payment to CMA, and the failure of "such person," i.e., the forwarder, to pay any part of the freight received, to CMA shall be considered a default "by the Merchant."

44. The court finds that Clause 5 of Section 12 of the Terms and Conditions can be construed to be directed to a situation that might arise if one jointly and severally liable party makes payment to another, and not to CMA.

45. Prior to the shipments at issue in this matter, World Shippers did a substantial amount of business with CMA, arranging for the shipment of approximately 145 forty-foot containers.

46. World Shippers' trial witness testified that he never saw the Terms and Conditions, that he was completely unaware of the definition of the term "Merchant," as used in the Terms and Conditions, and that World Shippers never agreed to be bound for any freight charges.

47. It was conceded at trial that World Shippers had paid freight charges directly to CMA in the past. World Shippers took the position that such payment was made "because the shipper paid [World Shippers]." The witness further stated that any collection of freight charges from the shipper was "a pre-service to just continue to get the business." The witness also stated that it was "never proper for [World Shippers] to collect and pay the shipping . . . ."

8

48. Bills of Lading may be marked as either "freight collect" or "freight prepaid."

49. A notation of "freight prepaid" on a Bill of Lading does not necessarily mean that the freight has been paid to the carrier. Instead, a carrier may mark a bill of lading as prepaid, simply because the regulations of certain countries do not permit entry of freight collect shipments.

50. The Bills of Lading in this matter were marked prepaid, but the freight was no paid prior to the shipment.

C. The Invoices

51. The Invoices before the court reflect the amounts due to Plaintiff in unpaid Freight for the 23 shipments at issue herein.

52. The charges due under the Invoices represent unpaid ocean freight and related charges in connection with the Bills of Lading.

53. The total amount due to CMA under the Invoices is $117,952.00.

54. As testified to by World Shippers' trial witness, the only reason that World Shippers did not pay CMA the freight due on the 23 shipments at issue is because World Shippers did not receive payment from the shippers.

## CONCLUSIONS OF LAW

55. In view of the corporate relationship among Plaintiff CMA, CMA SA, and Delmas and the finding that CMA was, at all relevant times, an agent of Delmas and CMA SA, the court holds that Plaintiff has standing to pursue this matter and rejects Defendant's argument to the contrary.

56. Interpretation of maritime contracts for the shipment of goods such as those at issue here are governed by federal maritime law. Norfolk Southern Railway Co. v.

9

Kirby, 543 U.S. 14, 22-23 (2004); see Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 823 (2d Cir. 2006); APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc., 2012 WL 3765043 *3 (S.D.N.Y. 2012).

57. Federal maritime law incorporates general common law rules of agency. APL Co., 2012 WL 3765043 *6; Man Diesel A/S v. Seahawk North America LLC, 2009 WL 3030220 *2 (S.D.N.Y. 2009); Fireman's Fund McMgee Marine v. M/V CAROLINE, 2004 WL 287663 *2 (S.D.N.Y. 2004); Getty Oil Co. v. Norse Management Co. (PTE) Ltd., 711 F. Supp. 175, 176 (S.D.N.Y. 1989).

58. An agent that makes a contract on behalf of a disclosed principal is not deemed a party to the contract, and is therefore not to be held liable for its performance. Fireman's Fund, 2004 WL 287663 *2. Thus, an agent for a disclosed principle cannot be held liable for breach of contract by the principal. Id.; Man Diesel A/S, 2009 WL 3030220 *2; see Seguros Banvenez, S.A. v. S/S Oliver Drescher, 761 F.2d 855, 860 (2d Cir. 1985).

59. Despite the general rule of non-liability of an agent for a disclosed principal, such an agent may nonetheless be liable on a contract if, inter alia, the agent clearly manifests an intent to be so bound, "instead of, or in addition to, its principal." Ariel Maritime Group, Inc. v. Zust Bachmeier of Switzerland, Inc., 762 F. Supp. 55, 60 (S.D.N.Y. 1991).

60. In contrast to the general rule with respect to the non-liability of an agent for a disclosed principal, an agent for an undisclosed principle may be held liable for breach of contract, "just as though he was the principal." Orient Mid-East Lines v. Albert E. Bowen, Inc., 458 F.2d 572, 575 (2d Cir. 1972), quoting, *Restatement,*

10

*Second, Agency* §§ 4, 321). To avoid such liability, the agent must disclose the identity of his principal "at or before the time when the contractual agreement is made final." Id. at 576.

61. The issue of whether a principal is disclosed or undisclosed depends upon the facts of the case. The question is whether the circumstances reasonably indicate the identity of the principal. Man Diesel A/S, 2009 WL 3030220 *2. "The key to disclosure is whether the third party has 'sufficient information to distinguish the principal from all others.'" Id. (citation omitted). It is only when the principal is provided with information sufficient to "distinguish the principal from all others," that the principal will be deemed to have been disclosed. Id.

62. For example, a principal is identified as "the owner" of a particular vessel, the identity of the principal is easily ascertained and is considered to have been disclosed. Getty, 711 F. Supp. at 177; John F. Dillon & Co. LLC v. Foremost Maritime Corp., 2004 WL 1396180 *4 (S.D.N.Y. 2004). On the other hand, the law imposes no general duty on a party to a contract to undertake research to learn the identity of an otherwise undisclosed principal.

63. The mere fact that a forwarder is known to act on behalf of others does not impose a duty on the carrier to ascertain the identity of the shipper on whose behalf the forwarder acts. Orient Mid-East, 458 F.2d at 576.

64. World Shippers argues, and the court holds, that when entering into the booking confirmations, World Shippers acted as an agent on behalf of the shippers whose goods were ultimately shipped goods in connection with the 23 invoices at issue here. Cf. Orion Ins. Co., PLC v. M/V Humacao, 851 F. Supp. 575, 577-78

(S.D.N.Y.1994) (holding that Non Vessel Operating Common Carriers ("NVOCC's") are analogous to freight forwarders and are deemed to be the agents of shippers).

65. When World Shippers agreed to the booking confirmations, it did not identify the shippers and therefore acted on behalf of undisclosed principals. Thus, World Shippers became bound as a contracting party to the agreements with CMA.

66. As set forth in the booking confirmations, World Shippers' agreements thereto incorporated the full terms and conditions of the Bills of Lading. Those terms and conditions, as set forth above, made World Shippers jointly and several liable with the shippers for payment due as reflected in the 23 invoices.

67. It matters not that the shippers were later identified to CMA. Such identification did not transform World Shippers from the status of an agent working for an undisclosed principal at the time of the booking confirmations, to that of an agent working for a disclosed principal at the time the shipments took place. Such identification merely made the shippers additional liable parties on the contracts with CMA.

68. As a party bound by the terms and conditions of the Bills of Lading at issue in this matter, and the invoices generated with respect thereto, World Shippers is liable for payment to Plaintiff CMA.

69. The business interests furthered by holding World Shippers liable are clear and evidenced by the parties' prior dealings. Specifically, the fact that World Shippers made direct payment to CMA for the several prior shipments it arranged accounts for CMA's willingness to reserve cargo space for World Shippers for future

voyages. World Shippers had proven its credit-worthiness in the past, and CMA relied thereon to continue to do business with World Shippers.

## CONCLUSION

For the foregoing reasons the court holds that Defendant World Shippers is liable to Plaintiff CMA-CGM (Canada). Plaintiff is directed to submit a judgment on notice to this court within two weeks of the date of this decision.

SO ORDERED.

s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
January 17, 2013